**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JAMES RYAN, DAVID ALLEN and RONALD SHERMAN, on Behalf of Themselves and All Others Similarly Situated, | : | No: 1:10-CV-00145-RMC |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| WILLIAM WALTON, JOHN FIRESTONE, ANTHONY GARCIA, LAWRENCE HEBERT, LAURA VAN ROIJEN, BROOKS BROWNE, ALEX POLLOCK, MARC RACICOT, ANN BATES, EDWARD MATHIAS, ROBERT LONG, JOAN SWEENEY, ALLIED CAPITAL CORPORATION, ARES CAPITAL CORPORATION and ARCC ODYSSEY CORP. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR**
**EXPEDITED DISCOVERY**

## INTRODUCTION

Plaintiffs hereby file this Reply to Defendants' Opposition to Plaintiffs' Motion for Expedited Discovery ("Defendants' Opp."). This Reply significantly tailors the scope of discovery sought to narrow, particularized requests for documents, expedited production of which is necessary to avoid undue prejudice to Plaintiffs.[1] *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 39 (D.D.C. 2005) (citing 15 U.S.C. §77z-1(b)(1)). Indeed, unless discovery is granted, this unfair prejudice will cause irreparable harm on March 26, 2010, when Allied Capital Corporation's ("Allied") shareholders are scheduled to vote on the proposed transaction at issue. This prejudice is exacerbated by the fact that Prospect Capital Corporation ("Prospect") has now made a third offer to acquire Allied, at a ***25% premium*** over the deal scheduled for vote. *See* Exhibit A to the Declaration of Michael G. McLellan. Time is of the essence. *See Woodward & Lothrop, Inc. v. Schnabel*, 593 F. Supp. 1385, 1394 (D.D.C. 1984) ("Given the current state of information now before the shareholders, proceeding with the vote would itself cause an irreparable injury to the shareholders who would be compelled to make a vital investment decision based on incomplete and potentially materially misleading information.")

## DISCOVERY SOUGHT

Plaintiffs now only seek production of: (1) documents Defendants have already agreed to produce in parallel proceedings in Maryland state court; (2) Allied's documents related to discussions with Prospect, including documents related to Prospects' recent unsolicited, non-binding offers ("Prospect Offers") to purchase Allied on terms significantly more advantageous to shareholders that the deal scheduled for vote; and (3) documents related to GSO Partners'

---

[1] The "undue prejudice" standard for lifting a PSLRA discovery stay is essentially synonymous with the "reasonableness, or good cause, test" governing motions for expedited discovery in non-PSLRA cases, and Plaintiffs accordingly focus herein on the "undue prejudice" standard. *See Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit* Authority, 234 F.R.D. 4, 6 (D.D.C. 2006) (describing "good cause" test).

recent purchase of Allied's interests in the Callidus Funds ("Callidus Transaction"), which at cost total $250 million, for an undisclosed amount.

## BACKGROUND

As mentioned above, the shareholder vote on Ares Capital Corporation's ("Ares") acquisition of Allied ("Proposed Transaction") is now scheduled for March 26, 2010 ("Special Meeting"). As it stands, Allied's shareholders will be forced to make that vote without the necessary information to determine if that transaction is in their best interest. This is so because Allied's 800+ pages of filings with the Securities and Exchange Commission ("SEC") fail to adequately disclose information relating to (1) the history, background, and internal analysis of discussions between Allied and Prospect and (2) the financial details and effect of Allied's sale of its interest in the Callidus Funds.[2]

Defendants have resolutely refused to provide documents related to these two events to Plaintiffs. Indeed, Defendants have even refused to produce a "core set of internal documents related to the proposed merger" that Defendants have agreed to produce in parallel proceedings now pending in state court in Maryland, despite the fact that such production would impose essentially no additional burden on Defendants. Defendants' Opp. at 8.

The rapid sequence of events subsequent to the filing of Plaintiffs' complaint demonstrates why expedited discovery is warranted here. As set forth in Plaintiffs' initial Motion, the Proposed Transaction was announced on October 26, 2009. Complaint at ¶ 32. It was not until January 20, 2010 – the day after Allied rejected the Prospect Offer – that Allied shareholders learned that Prospect had made numerous expressions of serious interest in

---

[2] As set forth in Plaintiffs' opening brief, on January 20, 2010, an affiliate of the Blackstone Group, GSO Capital Partners, entered into an agreement to purchase the Collateral Management Agreements of Callidus Capital Management, a portfolio company of Allied, for an undisclosed amount.

acquiring Allied over the previous nine months.[3]  Complaint at ¶ 46.  While Defendants attempted to rectify this nondisclosure by filing an amended Proxy with the SEC after Plaintiffs' complaint was filed, that Proxy merely included a single paragraph concerning Allied's rejection of the Prospect Offer.  It still failed to disclose the history of the offer and, additionally, failed to disclose that Prospect had expressed a willingness to increase its offer.  Indeed, Prospect did increase its offer on January 26, 2010; Allied again summarily rejected the increased offer.

Similarly, the various documents filed with the SEC fail to disclose the amount of money at issue in the Callidus Transaction – a transaction where GSO Partners agreed to purchase the Collateral Management Agreements of Callidus Capital Management, which total nearly $250 million at cost.  Decl. of Ian Matyjewicz, (Docket #2) ("Matyjewicz Dec."), Ex. 2 at 94, Ex. 5 at 92.  As explained by Mary O'Connor, ASA MRICS, Partner and Director of Valuation Services of RGL Forensics, it is impossible for shareholders to determine whether the proposed acquisition of Allied by Ares is a fair value and in their best interests without knowing this figure.  Matyjewicz Dec., Ex. 1 at 4.[4]

Without the information discussed above, shareholders cannot make a fully informed decision whether to vote in favor of Ares' acquisition of Allied. This will constitute irreparable harm.  *See Woodward*, 593 F. Supp. at 1394.

---

[3] This interest was first disclosed in a letter from Prospect ("Prospect Letter") that Allied filed with the SEC on January 20, 2010.  The revelations in the Prospect Letter made it clear that certain representations in a Form N-14 Registration Statement and Joint Proxy ("Proxy") Ares filed with the SEC on December 16, 2009 were materially false, insofar as that Proxy did not mention Prospect, let alone the Prospect Offer.  Accordingly, upon review of that letter, Plaintiffs filed the present complaint alleging violations of Rule 14a-9.  While Defendants spend much of their brief attacking Plaintiffs' counsel for their decision to assert 14a-9 claims in this forum, the reality is that those claims were the result of the revelations in the Prospect Letter, not in response to any events in the Maryland litigation.

[4] Any significant discussion of the Callidus Transaction is conspicuously absent from the Defendants' memorandum of points and authorities as well as the consolidated complaint filed in Montgomery County. In that action, the lead plaintiffs have not filed for a preliminary injunction, nor attached an affidavit from an expert to any of their filings. In addition, Defendants' disclosure of "core documents" to the plaintiffs in the consolidated Montgomery action two days before the February 5, 2010 hearing in  this Court is a transparent attempt to avoid having to litigate against plaintiffs who are aggressively pursing the rights of Allied shareholders.

## ARGUMENT

### I.   STANDARDS OF LAW

Expedited discovery is appropriate in a case governed by PSLRA when (1) "the discovery sought by plaintiffs [is] particularized" and (2) when the discovery is "necessary to either preserve evidence, or to prevent undue prejudice." *Fannie Mae,* 362 F. Supp. 2d at 39 (D.D.C. 2005).  Discovery requests are sufficiently "particularized" when they "adequately specify the target of the requested discovery and the types of information needed to relieve that burden." *Id.* at 39 (citations omitted).  This test is readily met when a plaintiff seeks production of a "clearly defined universe" of documents relevant to the ends for which the discovery is sought.  *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002).

Undue prejudice occurs when the "prejudice . . . is improper or unfair under the circumstances." *Fannie Mae*, 362 F.Supp.2d at 39.  Such prejudice, therefore, amounts to "'improper or unfair treatment' amounting to something less than irreparable harm." *Vacold LLC v. Cerami*, 00-4024, 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001).[5]

### II.   PLAINTIFFS' NARROWED DOCUMENT REQUESTS ARE SUFFICIENTLY PARTICULARIZED

The three narrow categories of documents Plaintiffs seek are undoubtedly "particularized" within the meaning of the PSLRA.

The first category is the "core set of internal documents related to the proposed merger" that Defendants have already agreed to produce to lead plaintiffs in the cases pending in Maryland's state court.  *See* Defendants' Opp. at 8.  As this request seeks production of a discreet set of documents relevant to the Proposed Transaction which bear directly on Plaintiffs'

---

[5] *See also In re Royal Ahold N. V. Sec. & Erisa Litig.,* 319 F. Supp. 2d 634 (D. Md. 2004) (lifting stay where delay in production of documents would have caused undue prejudice to plaintiff's ability to litigate their claims expeditiously).

nondisclosure claims, Plaintiffs' requests are sufficiently particular to warrant production. *WorldCom,* 234 F. Supp.2d at 306 (finding requests sufficiently particular when they sought production of "clearly defined universe of documents . . . [which] [Defendant] has already produced in connection with other identified proceedings.").

The second set include all of Defendants' internal, non-public documents relating to the Prospect Offers, specifically including board minutes, any internal analyses of that offer, and any internal communications related to that offer. Under law governing the PSLRA, this request is sufficiently particular. *See Vacold LLC,* WL 167704, at *7 (finding requests sufficiently particular because "plaintiffs have requested [particularized] discovery solely related to the nature and timing of J & J's interest in AVT and VLN, and its agreement to invest in those companies.").

Finally, Plaintiffs seek documents revealing the amount of the Callidus Transaction. This is also a narrowly tailored request that is appropriate for expedited treatment. *See Lane v. Page,* 581 F.Supp.2d 1094 (D.N.M. 2008) (compelling disclosure of offers for oil and gas leases in connection with a proposed merger).

These requests are qualitatively different than those found in *Fannie Mae* and *In re Countrywide Fin. Corp. Derivative Litig.,* 542 F. Supp. 2d 1160, 1181 (C.D.Cal. 2008), cases upon which Defendants rely. In *Countrywide*, the plaintiffs served "exceedingly broad and far-reaching requests that may or may not overlap with . . . discovery requested in [parallel cases] and simply [could not] be viewed as particularized." *Id.*[6] And, in *Fannie Mae*, the plaintiffs sought

---

[6] It also bears mention that the *Countrywide* court exclusively based its decision on the "particularity" prong of the test, and declined to determine if Plaintiffs would suffer "undue prejudice" from a lack of production under the circumstances. *In re Countrywide*, 542 F. Supp.2d. at 1181 (noting "[b]ecause the lack of particularity in Plaintiffs' discovery requests precludes exception from the PSLRA stay, the Court declines to address the other prongs of the test" and granting leave to file amended motion.)

documents that were "voluminous and possibly irrelevant to the claims." *Fannie Mae*, 362 F.

Supp. at 39.  The documents requests here are, by comparison, narrowly tailored and highly

relevant.

III.    **PLAINTIFFS WILL SUFFER UNDUE PREJUDICE AND IRREPARABLE HARM IF THEY ARE DENIED ACCESS TO THE REQUESTED DOCUMENTS**

    A.    **Plaintiffs Will Suffer Undue Prejudice if Denied Access to the Documents Provided to the Maryland Plaintiffs**

In PSLRA cases, "[c]ourts have found undue prejudice where plaintiffs would be unable

to make informed decisions about their litigation strategy in a rapidly shifting landscape because

they are the only major interested party without documents forming the core of their

proceedings." *In re Bank of America Corp. Sec., Derivative, and Employment Ret. Income Sec.*

*Act (ERISA) Litig.*, 09-2058, 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) (lifting PSLRA

discovery stay.)  In this case, the Maryland plaintiffs are now slated to receive at least part of the

discovery Plaintiffs seek, which counsels against tolerance of Defendants' efforts to delay this

litigation. Indeed, in similar circumstances, courts commonly follow the principle articulated in

*In re Bank of America* and permit PSLRA plaintiffs access to discovery provided non-PSRLA

plaintiffs.  *See, e.g.*, *Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v.*

*Sadia S.A.*, 08-9528, 2009 WL 1285845, at *1 (S.D.N.Y. May 8, 2009) (lifting discovery stay

because of "existence of parallel litigation"). [7]

---

[7] *See also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004) (lifting discovery stay because defendant was subject to "numerous civil and criminal actions," and plaintiff in parallel litigation were "prepared to proceed with discovery."); *In re Tyco Intern , Ltd. Multidistrict Litig.*, 02-1335-B, 2003 WL 23830479, at *4 (D.N.H. Jan 29, 2003) (lifting stay because "the Securities Act plaintiffs would be at a serious disadvantage if they are denied access to documents that are produced to other plaintiffs and government investigators"); *WorldCom*, 234 F.Supp.2d at 305 (lifting PSLRA discovery stay to require production of documents produced to government entities and that in "all likelihood [will] soon be in the hands of the ERISA plaintiffs."); *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, MDL-1446, 2002 WL 31845114, at *2 (S.D.Tex. Aug. 16, 2002) (lifting discovery stay).

Here, denying Plaintiffs access to documents Defendants admit are "core documents" would make it impossible for Plaintiffs' ability to achieve the relief they seek before the shareholder vote scheduled for March 26, 2010, which would cause irreparable harm and *a fortiori* be unfairly prejudicial to Plaintiffs.  Moreover, Plaintiffs would "suffer a severe disadvantage in formulating their litigation" strategy, which could "limit their chances of recovery relative to other parties with claims of comparable, or even lesser, merit."  *Royal Ahold*, 220 F.R.D. at 252.[8]  This undue prejudice – which presently suffices to lift the stay – will be even more pronounced if settlement negotiations begin in the Maryland proceeding.  *See id.* (noting denial of access to documents will pose "severe disadvantage" if "the parties proceed quickly to settlement negotiations.").

Moreover, denying Plaintiffs discovery raises case management concerns, easily alleviated by modifying the discovery stay.  Without modification of the stay and the consequential coordination of discovery, both Plaintiffs' case and the Maryland case will proceed on different tracks.  Avoiding such multiplication has led courts to lift the discovery stay.  *Tyco*, 2003 WL 23830479, at *4 ("keeping all parties on an equal footing with respect to discovery serves important case management interests").  And, because Defendants will have "already collected, reviewed, and organized the documents for production in other proceedings . . . the burden of making another copy for plaintiffs here will be slight."  *Vacold LLC*, 2001 WL 167704, at *6.  For that reason, the documents Defendants have agreed to produce to the Maryland Plaintiffs should be produced here.

---

[8] Here, Plaintiffs assert claims under SEC Rule 14a-9 and Section 14(a) of the '34 Act based on the material nondisclosures in the Proxy.  These claims have not been, and cannot be, asserted in the Maryland actions under the Securities Litigation Uniform Standards Act. 15 U.S.C. § 78bb(f)(1).  As such, this case presents unique claims on behalf of the shareholders that are not being pressed in any other forum.

**B.      Plaintiffs Will Suffer Irreparable Harm if Denied Access to Documents Relevant to the Prospect Offer**

The discreet documents related to the Prospect offer are relevant to the omissions alleged in Plaintiffs' Complaint – omissions relevant to the shareholder vote now scheduled for March 26, 2010. Absent disclosure, those documents will go unreviewed before the vote is consummated, irreparably harming Plaintiffs. *See Woodward*, 593 F. Supp. at 1394 (finding that an inadequately informed shareholder vote causes "irreparable injury to the shareholders."). Since the requisite "undue prejudice" to lift the PSLRA discovery stay is "something *less* than irreparable harm," such undue prejudice must exist when a plaintiff stands to be irreparably harmed. *Vacold*, 2001 WL 167704, at *6 (emphasis added).  In short, "[p]ost-consummation relief from the consequences of a premature and uninformed vote would be inadequate," and Plaintiffs will suffer undue prejudice if they are not permitted discovery concerning the Prospect Offer prior to the Special Meeting. *Woodward & Lothrop*, 593 F.Supp. at 1394.

Notably, Defendants' Amended Proxy still fails to disclose any information concerning the history of Prospect's overtures to Allied.  Instead, their belated disclosures consist of a single paragraph describing the January 14, 2010 offer, and fail entirely to discuss (or even mention) the nine months of overtures preceding that offer.  Matyjewicz Dec., Ex. 5 at 127.  And, while Prospect seeks to disseminate its own proxy, that proxy cannot disclose any of the information Plaintiffs seek to discover, as Allied denied Prospect any access to its internal documents.[9] *Id.* Such circumstances present a compelling demonstration of undue prejudice.  *Cf. Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, 1999 WL 223158, at *1 (S.D.N.Y. April 16, 1999) (lifting discovery stay during proxy fight where defendant sought to take over company).

---

[9] This assumes that the Prospect proxy would cure disclosure deficiencies in the Allied proxy – a questionable assumption.  *See Shaev v. Saper*, 320 F.3d 373, 381 (3rd Cir.. 2003) ("Material not included in the proxy statement is generally not charged to the knowledge of the stockholder").

Indeed, courts have lifted the PSLRA discovery stay to require disclosure of third-party negotiations when doing so was necessary to prevent undue prejudice. *See, e.g. Vacold*, 2001 WL 167704, at *7.

### C.    Plaintiffs Will Suffer Irreparable Harm if Denied Access to the Information Related to the Callidus Transaction

As indicated above, on January 20, 2010, GSO Partners agreed to the Callidus Transaction, but Allied failed to disclose the amount agreed upon for the purchase. The expert report of Mary O'Connor, ASA MRICS, Partner and Director of Valuation Services of RGL Forensics, states that without this information it is impossible to determine if the Proposed Transaction is a fair value and in their best interests. Matyjewicz Dec., Ex. 1 at 4.  Defendants have offered nothing to rebut this opinion.  As such, Allied shareholders will suffer irreparable harm if the March 26, 2010 vote proceeds without this information because it is material to the deliberations of a reasonable shareholder.[10]  *See Lane v. Page,* 581 F. Supp. 2d 1094 (D.N.M. 2008) (finding that failure of proxy statement issued in connection with proposed merger to disclose offers for oil and gas leases was a material omission under the Securities Exchange Act as the payments for the leases themselves would be a certain benefit that should have been disclosed); *see also Royal Ahold,* 220 F.R.D. at 251 (finding that when a plaintiff presents a particularly strong case, the dangers the PSLRA sought to prevent through its mandatory stay are far less apparent).

---

[10] Materiality in a securities case does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote; what the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449 (1976).

## CONCLUSION

For the foregoing reasons, it is plain that Plaintiffs have requested a narrowly tailored

production of documents without which their claims in this action will be irreversibly prejudiced.

As such, the Court should lift the PSLRA's stay of discovery for these limited documents, and

direct that Defendants produce the requested documents on an expedited basis.

Dated: February 9, 2010

FINKELSTEIN THOMPSON LLP

/s *Donald J. Enright*_____
Donald J. Enright, Esq.
Michael McLellan, Esq.
The Duvall Foundry
1050 30th Street, N.W.
Washington, DC 20007
Tel:  (202) 337-8000
Fax:  (202) 337-8090

**OF COUNSEL**
LEVI & KORSINSKY, LLP
Eduard Korsinsky, Esq.
Juan E. Monteverde, Esq.
Ian T. Matyjewicz
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171