**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JAMES RYAN, DAVID ALLEN and RONALD SHERMAN, on Behalf of Themselves and All Others Similarly Situated,<br><br>         Plaintiffs,<br>    v.<br><br>WILLIAM WALTON, JOHN FIRESTONE, ANTHONY GARCIA, LAWRENCE HEBERT, LAURA VAN ROIJEN, BROOKS BROWNE, ALEX POLLOCK, MARC RACICOT, ANN BATES, EDWARD MATHIAS, ROBERT LONG, JOAN SWEENEY, ALLIED CAPITAL CORPORATION, ARES CAPITAL CORPORATION and ARCC ODYSSEY CORP.,<br><br>         Defendants. | : : : : : : : : : : | No: 1:10-CV-00145-RMC<br><br>**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION** |

Plaintiffs hereby file this Reply to Defendants' Opposition ("Defendants' Opp") to Plaintiffs' Motion for a Preliminary Injunction ("Plaintiffs' Opening Brief").

**INTRODUCTION**

This class action challenges Ares Capital Corporation's ("Ares") proposed acquisition ("Proposed Transaction") of Allied Capital Corporation ("Allied").  The shareholder vote on the Proposed Transaction is now scheduled for March 26, 2010.

Plaintiffs' initial Motion demonstrated that a preliminary injunction is necessary in light of material misrepresentations in Defendants' proxy materials and in light of Defendants' failure to properly consider Prospect Capital Corporation's ("Prospect") numerous expressions of serious interest ("Prospect Offers") in acquiring Allied.  Unless this Court grants injunctive relief to cure these issues, Class Members will suffer irreparable harm. *See Bender v. Jordan*, 439

F.Supp.2d 139, 177 (D.D.C. 2006) (holding that an uninformed shareholder vote causes

irreparable harm); *Woodward & Lothrop, Inc. v. Schnabel*, 593 F. Supp. 1385, 1394 (D.D.C.

1984) (same).[1]

## RECENT EVENTS

Plaintiffs' initial Motion demonstrated that Defendants' then-current proxy statement

failed to adequately disclose (1) the disposition of $242 million of Allied's assets[2] as well as (2)

information pertaining to Prospect's numerous expressions of serious interest in acquiring Allied

over the last nine months.  *See* Plaintiffs' Opening Brief at 18-21.  This included an unsolicited,

non-binding offer to purchase Allied for a substantial premium to the Proposed Transaction

which Defendants rejected.

Since that Motion was filed, those concerns have been exacerbated.  On January 26, 2010

– after Plaintiffs' complaint was filed – Prospect increased its offer to acquire Allied so that the

implied value was more than 20% greater than the implied value of the Ares offer.  *See*

Plaintiffs' Opening Brief at 9.  On February 3, 2010, Allied rejected Prospect's revised offer.

(Matyjewicz Decl.  Ex. 1).  That same date, Allied responded to Prospect's assertion that it had

been shut out of meaningful discussions with Allied by asserting:

> Although we held some informal discussions and met with representatives from
> Prospect in April 2009, we were unable to advance those discussions because
> Prospect was unwilling to provide basic information that we requested. During
> our discussions, Prospect made claims to have access to a significant amount of
> third party capital. While we were intrigued by these references, Prospect was
> unwilling to disclose any details, including the identity of the mysterious capital
> source, nor was Prospect willing to provide any information regarding the
> financial outline of a potential transaction. . .

---

[1] *ODS Technologies, L.P. v. Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003) (holding threat of an uniformed
shareholder vote constitutes irreparable harm); *In re Pure Resources, Inc. S'holders Litig.*, 808 A.2d 421, 452 (Del.
Ch. 2002) (irreparable injury is threatened when a shareholder might make a voting decision on the basis of
materially misleading or inadequate information).

[2] Approximately one third of Allied's market cap as of January 8, 2010.

On February 9, 2010, Prospect increased its offer to 25% above the implied value of the

Ares offer. (Matyjewicz Decl., Ex. 2).[3] In an 8-K filed with the SEC, the letter from Prospect to

Allied regarding this offer revealed numerous material misrepresentations by Allied:

> **5. Allied's Account of Prospect's Approach to Allied is Revisionist History . . .** Let there be no misunderstanding – your assertion that "Prospect was unwilling to provide basic information" and that "at no time. . . did Prospect make an offer to acquire Allied" is misleading. We clearly stated that any potential financing sources providing capital should any be needed in addition to our own could, and would, be disclosed after a mutual confidentiality agreement was executed.
>
> Last April, after Graham D.S. Anderson, a member of the Prospect board of directors, met in Washington D.C. with William L. Walton, Chairman of the Allied board, to discuss a potential transaction between Prospect and Allied, Alex Fine, an executive of Allied, then sent Mr. Anderson a confidentiality agreement that Mr. Fine stated was "to be executed by Prospect and Allied prior to engaging in any preliminary discussions." One date later, Joseph Ferraro, Prospect's General Counsel, sent his comments on the draft confidentiality agreement because Allied was focused on completing its debt restructuring.
>
> We know from the Proxy Statement that on the very day that Prospect's last efforts to finalize a confidentiality agreement were being rebuffed by Mr. Walton, Allied's board me to, among other things, receive an update on a potential transaction with Ares, and that shortly thereafter Ares and Allied entered into a mutual confidentiality agreement. It is worse than disingenuous for Allied to suggest that "Prospect was unwilling to provide basic information" to Allied when Allied was unwilling to exchange confidential information in the conventional (or any) manner with anyone but Ares. (Matyjewicz Decl Ex. P. 5 )

* * *

> **8. Financial Information in the Ares-Allied Proxy Statement is Outdated and Potentially Misleading** On March 26, 2010, Allied hopes to be asking shareholders to vote based on outdated financial information in the Proxy Statement that will be almost six months old, that will not reflect (i) substantial debt reductions; (ii) a December 21, 2009 valuation of Allied's portfolio; and (iii) a December 31, 2009 third-party audit-report. Based on these factors, in light of our experience in the business, we believe that the Proxy Statement may substantially understate Allied's value. Over the past several months, the S & P/LSTA Leveraged Loan Index has increased, and we believe this suggests

---

[3] In addition, under Prospect's revised offer, Allied shareholders would own 56% of the combined company with Prospect, compared to only 30% with Ares.

correlatively that there are potentially significant increases in Allied's book value since the September 30, 2009 valuations.

Prospect's letter also made it clear that Allied materially misrepresented in its February 3, 2010 disclosure that it had engaged in recent meaningful dialogue with Prospect regarding a potential merger:

> [Y]our letter attempts to convey the misleading impression that Allied actually engaged in meaningful dialogue with Prospect. In fact, despite our repeated requests to meet with you to discuss our proposal, on February 1 [2010] at approximately 5 p.m. – a little over one day before you published your letter rejecting our proposal, your financial advisor (which is hopelessly conflicted as it is also the lead bookrunner for Ares in its $254 share offer last week, and a lender to Allied) requested an immediate meeting Prospect, on barely an hour's notice. Prospect obliged and provided all the information requested at the brief meeting. Far from a dialogue, we did not receive even a single question, phone call or email from Allied or its advisors related to the information we sent. In keeping with your lack of process throughout, we also did not receive a response to our offer to make a presentation to the Allied board. (Matyjewicz Decl. P. 2)

Allied rejected Prospect's latest offer on February 11, 2010. (Matyjewicz Decl., Ex. 3). Significantly, Allied did not refute Prospect's assertion that it is asking its shareholders to cast a vote on March 26, 2010 based on outdated financials, which do not provide a accurate valuation of Allied's assets. *Id.* As such, Allied continues to make material misrepresentations to shareholders regarding its dealings with Prospect and continues to refuse to disclose material information that shareholders need to cast an informed vote.

## **ARGUMENT**

In this Circuit, a preliminary injunction should issue when the movant demonstrates (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties and (4) that the public interest would be furthered by the injunction. *Katz v. Georgetown*

*Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001).  Because Plaintiffs meet this standard, the requested injunction should issue.

## I.   THE PSLRA DISCOVERY STAY DOES NOT BAR PLAINTIFFS' MOTION

Defendants argue that the Private Securities Litigation Act's  ("PSLRA") stay on discovery – which is set forth in a section entitled "Stay of Discovery," 15 U.S.C.A. § 78u-4(b)(3)(B) – applies to stay not just discovery, but also the present motion.  Defendants' Opp. at 10.  They base this argument on the proposition that the PSLRA's use of the word "other proceedings" in the statutory text readin "all discovery and other proceedings" applies to proceedings unrelated to discovery.  *Id.* (citing 15 U.S.C. § 78u-4(b)(3)(B)).

Defendants' proposition is wrong.  As the 9th Circuit has noted, "[g]iven the context and legislative history of the [PSLRA], it appears that the term ["other proceedings"] was intended to include litigation activity relating to discovery, which . . . ***would not . . .include all litigation activity in general***."  *Medhekar v. U.S. Dist. Court for the Northern Dist. of California*, 99 F.3d 325, 328 (9th Cir. 1996) (emphasis added).  Indeed, this precept likely explains why Defendants fail to cite a ***single case*** applying the PSLRA discovery stay to preclude adjudication of a preliminary injunction motion.  Since the present motion is not related to discovery, it does not implicate the PSLRA discovery stay, and accordingly is not barred by that stay.

Moreover, even if the PSLRA discovery stay did apply to the present motion, it would nevertheless not bar this motion.  It is well-settled that the PSLRA discovery stay should be lifted when doing so is necessary to prevent "undue prejudice."  15 U.S.C. § 78u-4(b)(3)(B).  This "undue prejudice" standard amounts to "'improper or unfair treatment' amounting to something less than irreparable harm."  *Vacold LLC v. Cerami*, 00-4024, 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001) (citations omitted).  Since unfair prejudice is "something ***less*** than

irreparable harm," such undue prejudice must exist when a plaintiff stands to be irreparably harmed. *Id.* (emphasis added). As a shareholder forced to make an uninformed vote suffers irreparable harm, a plaintiff who – as here – demonstrates the threat of such a vote has demonstrated the requisite "undue prejudice" to warrant lifting the PSLRA discovery stay.

## II.   PLAINTIFFS WILL LIKELY PREVAIL ON THE MERITS

### a.   Plaintiffs Have Adequately Plead A Claim And Have Demonstrated a Violation Under SEC Rule 14a-9

Plaintiffs have satisfied their burden of showing a likelihood of success on their 14a-9 claims by demonstrating that the proxy statement contained material omissions causing the plaintiff injury and that the proxy solicitation was an essential link in the accomplishment of the transaction. *Atlantic Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*, 295 F. Supp.2d 75, 81-82 (D.D.C. 2003). Defendants ignore Plaintiffs' thorough allegations of the Proxy's material omissions, including but not limited to: (1) whether the $165 million from the agreement with Ares to acquire Allied's interests in the SL Fund is included in the valuation of Allied; (2) the amount agreed upon for the Callidus Transaction with GSO Partners; and (3) information regarding the numerous expressions of serious interest in acquiring Allied over the prior eight months by Prospect. Complaint ¶¶ 53-55, 59, 70-73.

The materiality of these omissions is unquestionable as there is a "substantial likelihood that a reasonable shareholder would consider [them] important in deciding how to vote." *Bender v. Jordan*, 439 F. Supp.2d 139, 165 (D.D.C. 2006) (*quoting TSC Indus., Inc. v .Northway, Inc.*, 426 U.S. 438, 449 (1976)); *see also* Declaration of Mary O'Connor (stating that the absence of the above-referenced information "dramatically reduces the ability [of shareholders] to judge the adequacy and fairness of the merger consideration offered by Ares") (attached to the January 26, 2010 Declaration of Ian Matyjewicz (docket # 2)). The monetary value of two recent

transactions entered into by Allied that could have a substantial impact on the Company's valuation is important to shareholders in determining how to cast their vote. Further, shareholders would surely find important the history and details of serious overtures of interest by Prospect, especially given the superiority of the Prospect Offers. Thus, these disclosures are material.

Moreover, Plaintiffs can demonstrate that these material omissions have caused injury for purposes of § 14 because "the proxy solicitation itself . . . [is] an essential link in the accomplishment of the transaction." *Bender*, 439 F. Supp. 2d at 169 *quoting Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 385 (1970). Since a majority of the shareholders' votes are necessary here for the transaction to be consummated, the proxy solicitations are a critical part (and therefore an "essential link") of the defendants' strategy to obtain votes in favor of the transaction. *Bender*, 439 F. Supp.2d at 170. Accordingly, despite Defendants' arguments to the contrary, Plaintiffs have demonstrated a likelihood of success on their § 14a-9 claims.

**b.  Plaintiffs Have Standing to Bring Direct Claims for Breaches of Fiduciary Duty**

Defendants' argument that Maryland law does not recognize a duty flowing directly from the directors of a corporation to shareholders cannot be sustained. In this regard, just three years ago, the Maryland Court of Appeals (Maryland's highest court), citing a number of Maryland cases spanning over 100 years, recognized that directors owe common law fiduciary duties to shareholders, stating that "[i]t is well-settled that directors of a corporation 'occupy a fiduciary relation to the corporation *and its stockholders*.'" *Storetrax.com, Inc. v. Gurland,* 915 A.2d 991, 1000 (Md. 2007) (emphasis added) (citations omitted).[4] Similarly, the United States Court of

---

[4] It is true that in *Storetrax.com,* the Maryland Court of Appeals noted that it was unclear whether Delaware or Maryland law applied. However, it also found it unnecessary to decide because it noted that it "c[ould not] discern the difference, if any, in the outcome . . . whether the laws of Maryland or Delaware were applied." *Id.* at 1000.

Appeals for the Second Circuit, applying Maryland law, has held that "Maryland courts have clearly established the proposition that directors owe fiduciary duties to both the corporation *and the shareholders.*" *Strougo v. Bassini,* 282 F.3d 162, 173 (2d Cir. 2002) (emphasis in original). *See also Toner v. The Baltimore Envelope Co.,* 304 Md. 256, 268 (Md. 1985) ("[I]t is well settled in Maryland that [the defendant directors] owe a fiduciary duty to [corporation] Envelope Co. *and its shareholders*") (emphasis added); *Booth v. Robinson,* 55 Md. 419, 436-37 (Md. 1881) (cited in *Storetrax.com*) (same).  Nor are these holdings by Maryland's highest court and other appellate courts applying Maryland law outliers – many other jurisdictions have made precisely the same observation.[5]

Defendants' repeated invocation of Section 2-405.1 of Maryland's General Corporation Law does not change this precept.  Maryland's highest court has made it clear that 2-405.1 did **not** "replace[] all previously recognized common law fiduciary duties of directors owed to the corporation and its shareholders." *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 421 (Md. 2009).  Rather, such duties exist alongside the duties imposed by 2-405.1.  In other words, preexisting "common law fiduciary duties of directors remain in place" despite 2-405.1  *Id.*  As

---

[5] *See Maul v. Kirkman,* 270 N.J. Super. 596, 617 (App.Div. 1994) ("Corporate directors owe a fiduciary duty to the stockholders"); *Hatch v. Emery*, 400 P.2d 349, 353 (Ariz. Ct. App. 1965) ("A director of a corporation occupies a fiduciary relation to it and its stockholders"); *Red Bud Realty Co. v. South,* 96 Ark. 281, 291 (Ark. 1910) ("...therefore the directors owe certain fiduciary duties to the stockholders"); *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 179 (Cal. 2003) ("Officers and directors owe a fiduciary duty to stockholders"); *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1056 (Colo. 1995) ("The directors of a corporation owe fiduciary duties to the corporation and to the shareholders of the corporation"); *Ostrowski v. Avery*, 243 Conn. 355, 363 (Conn. 1997) ("An officer and director occupies a fiduciary relationship to the corporation and its stockholders"); *Quickturn Design Sys. v. Shapiro*, 721 A.2d 1281, 1292 (Del. 1998) ("the directors have a fiduciary duty to the corporation and its shareholders"); *Pyne v. Jamaica Nutrition Holdings*, 497 A.2d 118, 131 (D.C. 1985) ("Officers and directors of a corporation owe a fiduciary duty to the corporation and to its shareholders, which requires them to act in good faith in managing the affairs of the corporation"); *Flight Equipment & Engineering Corp. v. Shelton*, 103 So. 2d 615, 626 (Fla. 1958) ("An officer or director occupies a quasi-fiduciary relation to the corporation and the existing stockholders"); *Quinn v. Cardiovascular Physicians, P.C.*, 254 Ga. 216, 217 (Ga. 1985) ("It is settled law that corporate officers and directors occupy a fiduciary relationship to the corporation and its shareholders, and are held to the standard of utmost good faith and loyalty").

such, the conclusion from the cases set forth in the prior paragraph – that is, that directors owe fiduciary duties directly to shareholders – is unaffected by 2-405.1.

Moreover, Defendants' argument that *Shenker* only applies in the context of a cash-out merger finds no support in the text of that case – indeed, the analysis in that case suggests precisely the opposite conclusion. To be sure, given that *Shenker* involved a cash-out merger, *Shenker* unsurprisingly discussed the fiduciary duties owed in the context of such a merger. However, nowhere did it limit the principles articulated therein to such a context. Rather, it made clear that **all** common law fiduciary duties survived *Shenker*. 983 A.2d at 408. And when (as here) those fiduciary duties have been breached, direct claims lie. *Id.* at 346 ("[W]here a shareholder's action is based on breach of a duty owed directly to the shareholder, a direct action may be filed against the directors."). Plaintiffs have alleged claims for breach of fiduciary duty of candor and maximization of shareholder value, which impact only shareholders and are properly brought as direct claims against Allied.

### c.  Plaintiffs Have Stated a Claim for Breach of Fiduciary Duties

Plaintiffs have demonstrated here that the Defendants' did not act reasonably and in the best interests of the Company here. By failing to engage in good faith negotiations with Prospect when such negotiations hold the possibility of providing significantly superior consideration for Allied's shareholders, Defendants have breached their fiduciary duties to Allied shareholders. *See In re Topps Co. S'holders Litig.,* 926 A.2d 58 (Del.Ch. 2007) (explaining it was likely that dissident stockholders and competing bidder would succeed on the merits of their claim that incumbent directors violated their duty to ensure that stockholders received the highest value where competing bidder responded with a bid that was 10% higher than proposed buyer's and board did not appear to negotiate with the competing bidder in good faith).

Corporate directors also have a duty "to disclose fully and fairly all material information within the Board's control when it seeks shareholder action." *Stroud v. Grace*, 606 A.2d 75, 84 (Del.1992); *Parish v. Maryland & Virginia Milk Producers Ass'n,* 242 A.2d 512, 539 (1968) (stating that officers and directors of a corporation have a duty to disclose all facts material to the corporate transactions); *Arnold v. Society for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1277 (Del. 1994) (citations omitted).  Indeed, corporate directors "are under a fiduciary duty to disclose ***fully and fairly all material information within the board's control*** when it seeks shareholder action." *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A2d 1270, 1277 (Del 1994) (citations omitted) (emphasis added). It is well established that "[t]he most appropriate time to seek relief to remedy proxy disclosure violations is before the shareholder action related to the proxy occurs.  *In re Staples S'holders Litig.,* 792 A.2d 934, 960 (Del. Ch. 2001); *Wayne County Emples. Ret. Sys. v. Corti*, No. 3534-CC, 2009 LEXIS 126, at \*29 (Del. Ch. July 24, 2009). Seeking relief for disclosure violations prior to shareholder action is essential because "nearly all disclosure violations are per se irreparable harm because the harm arising from the un- or misinformed transaction is of a nature where the injury cannot be compensated adequately in damages." *Laborers Local 235 Benefit Funds v. Starent Networks Corp.,* No. 5002-CC, 2009 LEXIS 210, at \*1 (Del. Ch. Nov. 18, 2009).

Here it is clear that Defendants breached their fiduciary duties by providing incomplete information in their Proxy Statement and by failing to engage in good faith negotiations with Prospect. Allied is attempting to have shareholders to cast their vote on March 26, 2010 based on stale information that fails to provide information to determine whether the Proposed Transaction is fair and in the shareholders best interests. As such, Plaintiffs' Motion for a Preliminary Injunction should be granted.

### III.     PLAINTIFFS DEMONSTRATE A LIKELIHOOD OF IRREPARABLE HARM

Defendants' argument that Plaintiffs have failed to demonstrate a risk of irreparable harm

is misguided.  With respect to Plaintiffs' nondisclosure allegations, Plaintiffs allege all

shareholders "were deprived of their statutory rights to receive accurate information, and to be

free of deceptive information, bearing on their investment and voting decisions." *Bender v.*

*Jordan*, 439 F.Supp.2d 139, 177 (D.D.C. 2006).  This Court has noted that "it is well established

that such harms can be irreparable." *Id.*   In doing so, this Court was well in line with the weight

of authority in both this jurisdiction and others. *See, e.g. Woodward*, 593 F. Supp. at 1394.[6]  It is

no answer to suggest – as Defendants do – that the availability of "after the fact" monetary

damages obviates any harm from nondisclosure.  With respect to proxy omissions, a preliminary

injunction "specifically vindicates the stockholder right at issue-the right to receive fair

disclosure of the material facts necessary to cast a fully informed vote-in a manner that later

monetary damages cannot and is therefore the preferred remedy, where practicable." *In re*

*Staples, Inc. Shareholders Litigation*, 792 A.2d 934, 960 (Del.Ch. 2001).

Similarly, Defendants' refusal to properly negotiate with Prospect threatens irreparable

harm.  Following consummation of the Proposed Transaction, it will be nearly impossible to

"unscramble the eggs" to require proper consideration of the Prospect Offers. *See ODS Techs.*,

832 A.2d at 1262 (finding impossibility of conducting "post-hac reorganization" of board of

directors militated in favor of irreparable harm.).  And, requiring fair negotiation with Prospect

would "specifically vindicate the stockholder right at issue," and would therefore provide

compensation unavailable through later monetary compensation. *Staples*, 792 A.2d at 960.

---

[6] *Lichtenberg v. Besicorp Group*, 43 F.Supp.2d 376, 390 (S.D.N.Y.1999); *ODS Techs. LP v. Marshall*, 832 A.2d 1254, 1262 (Del.Ch.2003)

## IV.   THE BALANCE OF HARMS WEIGHS IN FAVOR OF GRANTING AN INJUNCTION

The balance of harms here weighs in favor of Plaintiffs.  If the shareholder vote goes

forward without the disclosures Plaintiffs seek, Plaintiffs and the class will suffer harm by being

wrongfully denied information to which they are statutorily entitled.  Similarly, if the Proposed

Transaction is consummated without adequate consideration being given to the Prospect Offer,

Plaintiffs and the Class will permanently lose the opportunity to enjoy the fruits of that offer,

which are substantially greater than those in the Prospect Offer.  By contrast, Defendants stand

only to lose the time it would take to make proper disclosures and to engage in a fair negotiation

with Prospect; their arguments to the contrary are wildly overstated.  This minimal harm cannot

outweigh the substantial harm Class Members will suffer if the present motion is not granted.

## V.   PLAINTIFFS HAVE COMPLIED WITH PROCEDURAL DEMANDS

Plaintiffs have filed the certifications required by the PSLRA with the Court, and have

therefore satisfied the procedural requirements of the PSLRA.  *See* Docket #20.  As to

Defendants' request that Plaintiffs must demonstrate they are willing and able to post a bond for

"tens of millions" dollars before an injunction can issue: Defendants' assertion that they will

suffer this amount of damage is wholly speculative and conclusory, and cannot serve as a basis

to deny the present motion.

## VI.   THE COURT SHOULD NOT STAY THIS ACTION

Defendants finally argue Plaintiffs' state law claims should be stayed pursuant to the

doctrine set forth in *Colorado River Water Conservation District v. United States*, which

provides "an extraordinary and narrow exception to the duty of a District Court to adjudicate a

controversy properly before it."  424 U.S. 800, 813 (1976).  However, Defendants do not seek

(and could not achieve) a *Colorado River* stay of Plaintiffs' 14a-9 claim.  Rather, Defendants seek to force a piecemeal litigation of Plaintiffs' claims by staying only Plaintiffs' state law claims.  They cannot do so

Under *Colorado River*, a federal court has the discretion to stay an action pending resolution of an identical action pending in a state court, provided the party seeking the stay demonstrates exceptional circumstances warrant the stay.  *Robinson v. Ruiz*, 772 F.Supp. 212, 214 (D. Del. 1991).  Significantly, *Colorado River* only applies when the actions in question are "parallel."  424 U.S. 800.  Such parallelism does not exist when – as here – the state court proceedings cannot resolve all of the issues between the parties.  Accordingly, "a district court may enter a *Colorado River* stay order only if it has 'full confidence' that the parallel state proceeding will **end** the litigation."  *Intel Corp. v. Advance Micro Devices*, 12 F.3d 908, 913 (9th Cir. 1993) (emphasis added).  Indeed, the United States Supreme Court has explicitly noted that "the decision to invoke Colorado River necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case."  *Moses H. Cone Mem'l Hosp. v. Mercury Cost. Co.*, 460 U.S. 1, 28 (1983).  Since Defendants do not argue that the Maryland proceedings will resolve the case in its entirety, they have failed to demonstrate a *Colorado River* stay is appropriate and their efforts to seek such a stay must be denied.  *See Holder v. Holder*, 305 F.3d 854, 868 (9th Cir. 2002) ("Because there is substantial doubt that a final determination in the [state] proceeding will resolve all of the issues in [the federal court], we conclude that the district court abused its discretion in staying proceedings.").

## CONCLUSION

For the foregoing reasons, Plaintiffs have adequately showed a preliminary injunction is appropriate and Defendants have failed to defeat that demonstration.  As such, Plaintiffs' Motion should be granted.

Dated: February 16, 2010

FINKELSTEIN THOMPSON LLP


/s *Donald J.Enright*_____
Donald J. Enright, Esq.
Michael G. McLellan, Esq.
The Duvall Foundry
1050 30th Street, N.W.
Washington, DC 20007
Tel:  (202) 337-8000
Fax:  (202) 337-8090

**OF COUNSEL**
LEVI & KORSINSKY, LLP
Eduard Korsinsky, Esq.
Juan E. Monteverde, Esq.
Ian T. Matyjewicz
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171